**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KRYSTINA BERKO,<br><br>Plaintiff,<br><br>v.<br><br>WHIZ, LLC, d/b/a MUSTANGS GENTLEMAN'S CLUB,<br><br>Defendant. | Case No. 26-cv-02018-AWM-RES |

**MEMORANDUM AND ORDER**

Plaintiff Krystina Berko alleges that her former employer, Whiz, LLC, d/b/a Mustangs Gentleman's Club, fired her two weeks into her job as its general manager because she relayed dancers' reports that one of its owners had sexually assaulted and raped them. She sues Whiz for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and for retaliatory discharge in violation of Kansas public policy. The Clerk entered default against Whiz (Doc. 9), and Plaintiff moves for default judgment (Doc. 12). The Court held an evidentiary hearing on September 30, 2026. Plaintiff appeared through counsel and waived a jury on damages. Whiz did not appear. Docs. 20, 21.

The Court grants the motion as to Count I and denies it as to Count II, which fails under Kansas law. The Court awards Plaintiff $72,636.95 in back pay, prejudgment interest, and compensatory damages—far less than the $276,523.52 she seeks, because the record does not support her request for bonuses, front pay, or $50,000 in emotional-distress damages. The Court leaves attorney's fees and costs to the procedures described below.

# I. BACKGROUND

## *A. Facts*

The Complaint's well-pleaded allegations, which Whiz admits by its default, show the following. Plaintiff began work as general manager of Whiz's club in Junction City, Kansas, on May 28, 2025. Doc. 1 ¶¶ 6, 21. On May 30, dancers told Plaintiff that one of Whiz's three owners, Bruce Copney, had sexually assaulted and raped them at after-hours parties at the club that employees were required to attend. *Id.* ¶¶ 22–25.

Plaintiff brought those reports to the other two owners. On May 31, at Plaintiff's direction, two dancers repeated their accounts by phone to Jennifer Copney. *Id.* ¶¶ 27–30. On June 1, Plaintiff told the third owner, Kevin Andrade, what the dancers had reported. *Id.* ¶¶ 33–34. On or around June 12, 2025, Ms. Copney called Plaintiff, accused her of stealing liquor and of paying the dancers to lie about Mr. Copney, and fired her. *Id.* ¶¶ 36–39.[1]

## *B. Default and Notice*

Whiz is in default because it never appeared through counsel. Ms. Copney, who is not a lawyer, filed a pro se answer on Whiz's behalf. Doc. 4. Magistrate Judge Schwartz ordered Whiz to retain counsel and, when Whiz did not, struck the answer because a limited liability company may appear in federal court only through licensed counsel. Docs. 5, 8; *see Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556–57 (10th Cir. 2001). The Clerk then entered default. Doc. 9.

[1] The evidence shows that the firing occurred on June 11, 2025. Hr'g Ex. 2 ¶¶ 34–39; Hr'g Ex. 10. That date falls within the Complaint's "on or around June 12," and the Court uses it to calculate damages.

Whiz also received the notice that Rule 55(b)(2) requires. Assuming that Whiz's stricken answer was an appearance, Whiz was entitled to written notice of the application for default judgment at least seven days before the hearing. Fed. R. Civ. P. 55(b)(2); *see* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2686 & n.7 (4th ed. Apr. 2026 update).

Plaintiff provided that notice by sending the motion by certified mail to Whiz's registered agent. The mailing was delivered on May 11, 2026. Doc. 13-1 at 1–3. The Court's July 8 order setting a hearing warned that a failure to appear "will likely result in entry of default judgement and an assessment of damages," and the Clerk mailed that order to Whiz's three owners. Doc. 15. The Clerk then mailed and emailed Whiz notice of the September 30 hearing eight days in advance. Docs. 18, 19. Whiz therefore knew that the hearing would fix damages and could end in judgment.

### *C. The Hearing Record*

Plaintiff's evidence came in by exhibit rather than live testimony. The Court admitted Plaintiff's Exhibits 1 through 18 and 2.1 (cited here as "Hr'g Ex."), which include Plaintiff's affidavit, her counsel's fee affidavits and invoice, text messages, Whiz's offer letter, and three audio recordings. Doc. 21-1. Plaintiff herself did not attend. Doc. 20. Her affidavit states that fear of violence from Whiz or its associates kept her away. Hr'g Ex. 2 ¶ 72.

After the hearing, the Court ordered Plaintiff to file transcripts of the recordings, an affidavit authenticating any evidence not admitted at the hearing, a final itemized statement of damages, and a proposed judgment with any prejudgment-interest calculation. Doc. 20. Plaintiff filed the transcripts, an authenticating affidavit, and a final statement of damages. Docs. 22-1 to 22-5. After the Court ordered her to correct

her service, Plaintiff served that filing on Whiz's registered agent and owners. Docs. 23, 24.[2] Plaintiff emailed a proposed judgment but left every amount blank and did not calculate interest, so the Court has calculated each amount.

## II. LEGAL STANDARD

After the Clerk enters default, the Court may enter default judgment. Fed. R. Civ. P. 55(b)(2). The Court must first be satisfied that it has jurisdiction. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771–72 (10th Cir. 1997). A defaulting defendant admits the complaint's well-pleaded facts, but "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation omitted); *see Tripodi v. Welch*, 810 F.3d 761, 764–65 (10th Cir. 2016).

A default does not establish the amount of damages. *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1275 (D. Kan. 2016). The Court may award damages only on "a hearing or a demonstration by detailed affidavits establishing the necessary facts." *DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588-JWL, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)). Because Plaintiff waived a jury, the Court finds the facts relevant to damages. Doc. 20; *see* Fed. R. Civ. P. 55(b)(2);

[2] Doc. 20 directed Plaintiff to serve her filing by mail on Whiz's registered agent at 625 N. Adams and on all three owners. Plaintiff's certificates showed a mailing to "25 N Adams" and an email to Ms. Copney only. *E.g.*, Doc. 22-5 at 3. The Court ordered Plaintiff to serve the filing as Doc. 20 directed, Doc. 23, and Plaintiff filed a certificate of that service on October 22, 2026, Doc. 24.

42 U.S.C. § 1981a(c). The judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. ANALYSIS

### *A. Jurisdiction*

The Court has subject-matter jurisdiction over Count I under 28 U.S.C. § 1331 and over Count II under § 1367(a). Plaintiff alleges, and Whiz admits by default, that she filed a timely charge with the EEOC and sued within ninety days of her right-to-sue notice. Doc. 1 ¶¶ 14–16. Title VII's charge-filing requirement is not jurisdictional in any event. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550–51 (2019).

The Court also has personal jurisdiction over Whiz. Because no federal statute extends the Court's reach in Title VII cases, the Court may exercise personal jurisdiction over Whiz only to the extent that a Kansas court could. Fed. R. Civ. P. 4(k)(1)(A); *Townley v. ServiceMaster Co.*, No. 17-2430-DDC-JPO, 2017 WL 4843296, at *5 (D. Kan. Oct. 25, 2017); *see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Kansas's long-arm statute reaches as far as due process allows, so the question is whether Whiz has minimum contacts with Kansas and whether this suit arises out of or relates to those contacts. K.S.A. 60-308(b)(1)(L); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Both requirements are met: Whiz runs the Junction City club where it employed and fired Plaintiff, and this suit arises out of that firing. Doc. 1 ¶¶ 6, 21, 36–39. Nothing suggests that exercising jurisdiction over a business that operates in Kansas, sued over its own Kansas employment decision, would "offend

traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080 (quotation omitted).

The Court must also determine whether Whiz was properly served. *See Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008). A company may be served by following Kansas law. Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1). Kansas law permits return-receipt delivery to a company's agent "addressed to the person at the person's usual place of business." K.S.A. 60-304(e); *see* K.S.A. 60-303(c). Plaintiff sent the summons and Complaint to Whiz's registered agent, Kathryn Mayhew, at the address the Kansas Secretary of State lists for her, and the envelope was delivered there. Doc. 6 ¶¶ 3–5; Doc. 6-2. Nothing in the record suggests that Ms. Mayhew's usual place of business was elsewhere. *See Drummond v. Armata Logistics, Inc.*, No. 13-2633-EFM-KGG, 2014 WL 2897849, at *3 (D. Kan. June 26, 2014). Someone other than Ms. Mayhew signed the receipt, and the record does not establish that person's relationship to Ms. Mayhew or Whiz. Doc. 6-2. But service "is obtained . . . upon the delivery of the sealed envelope," K.S.A. 60-303(c)(3), and nothing requires the agent to sign for it. *In re A.P.*, 506 P.3d 988, 990–92 (Kan. Ct. App. 2022); *Drummond*, 2014 WL 2897849, at *3 (upholding service where an unknown person signed for mail addressed to the registered agent); *Petrie v. Pension Advisors, Inc.*, No. 17-1021-EFM-TJJ, 2017 WL 2306355, at *2 (D. Kan. May 26, 2017) (same, where a receptionist for a different company in the same building signed). Service was therefore valid.[3]

[3] *Cessna Fin. Corp. v. VYWB, LLC*, 982 F. Supp. 2d 1226, 1230–33 (D. Kan. 2013), is not to the contrary. It concerned service on an individual at his residence, and *A.P.* later construed K.S.A. 60-303(c)(1) differently. *See A.P.*, 506 P.3d at 991–92.

Even if the signature on the receipt were an irregularity, service would remain valid under K.S.A. 60-204. Plaintiff substantially complied with Kansas law through the mailing and delivery described above. And Ms. Copney filed an answer on Whiz's behalf seventeen days later, so the Court finds that the delivery made Whiz aware of this action. Docs. 4, 6-2; *see Burnham v. Humphrey Hosp. REIT Tr., Inc.*, 403 F.3d 709, 715–16 (10th Cir. 2005).

### *B. Liability*

*Count I.* A Title VII retaliation plaintiff must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (alteration in original) (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)). The defendant must also be an employer with fifteen or more employees, which is an element of the claim rather than a limit on jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); 42 U.S.C. § 2000e(b). Whiz admits by default that it employed twenty or more people at all relevant times. Doc. 1 ¶ 7.[4]

Plaintiff's reports to the owners were protected opposition. By bringing the dancers' reports to two owners, Plaintiff opposed the third owner's reported sexual harassment of women who worked at the club. Doc. 1 ¶¶ 23–25, 27–34, 42. *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)

---

[4] Whiz's stricken answer asserted that its staff were independent contractors. Doc. 4 ¶ 7. Because the answer was stricken and Whiz is in default, Whiz admits paragraph 7 of the Complaint. *See Bixler*, 596 F.3d at 762.

(treating an employee's "ostensibly disapproving account of sexually obnoxious behavior" as opposition). Plaintiff needed only a reasonable, good-faith belief that the conduct she opposed violated Title VII. *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015–16 (10th Cir. 2004); *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1171–72 (10th Cir. 2003).

Plaintiff's belief was reasonable. Reported sexual assaults by an owner describe severe harassment by the employer itself. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (holding that allegations including "criminal conduct of the most serious nature" were "plainly sufficient to state a claim for 'hostile environment' sexual harassment"); *Faragher v. City of Boca Raton*, 524 U.S. 775, 789–90 (1998) (recognizing that a company's owner or president may be treated as the company's proxy).[5]

The firing satisfies the remaining elements. Termination is materially adverse, because it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Ms. Copney heard the dancers' reports on May 31, fired Plaintiff less than two weeks later, and accused Plaintiff of paying the dancers to lie. Doc. 1 ¶¶ 27–30, 36–39. A firing "very

[5] Two possible objections do not change this conclusion. First, Whiz's stricken answer called its dancers independent contractors, whom Title VII does not protect. Doc. 4 ¶ 7; *see Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014). But courts routinely treat club dancers as employees under wage-and-hour law, *see, e.g.*, *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229–32 (3d Cir. 2019) (applying the FLSA's economic-realities test to Pennsylvania Minimum Wage Act claims); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241–44 (4th Cir. 2016) (FLSA), so Plaintiff's belief was reasonable whatever their status. Second, Plaintiff's position as general manager does not take her reports outside Title VII's protection, even if her duties included relaying harassment complaints. *See Poff v. Oklahoma ex rel. Okla. Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691, 701 n.5 (10th Cir. 2017) (finding "no support, in either the text of Title VII or related case law," for requiring that opposition fall outside the scope of employment).

closely connected in time to the protected activity" supports an inference of causation by itself, *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), and Ms. Copney's accusation ties the firing to the report. Those admitted facts show that Plaintiff's report was the but-for cause of her firing. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Plaintiff is entitled to default judgment on Count I.

*Count II*. Plaintiff's Kansas claim rests on the same firing, and Title VII's remedy for that firing bars it. Kansas recognizes a tort claim for an employee fired for "the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials"—that is, rules and laws "pertaining to public health, safety, and the general welfare." *Palmer v. Brown*, 752 P.2d 685, 689–90 (Kan. 1988). But Kansas does not recognize that claim where a state or federal statute supplies an adequate alternative remedy for the same conduct. *Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 299–300, 303 (Kan. 1998); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997).

Plaintiff's report concerned both workplace sexual harassment and serious crimes. To the extent it opposed sexual harassment of women who worked at the club, Title VII and the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 *et seq.*, both remedy retaliation for that opposition. *Polson v. Davis*, 895 F.2d 705, 709–10 (10th Cir. 1990); *Rupp v. Purolator Courier Corp.*, 790 F. Supp. 1069, 1072–73 (D. Kan. 1992); *Braun v. Dillon Cos.*, No. 94-2079-EEO, 1995 WL 261142, at *10–11 (D. Kan. Apr. 19, 1995) (barring the retaliatory-discharge claim of an employee fired after reporting sexual harassment because Title VII and the KAAD supplied adequate remedies). But the report also accused an owner of rape, sodomy, sexual assault, and forcing dancers to take drugs—serious crimes that fall within *Palmer*'s core. Doc. 1 ¶¶

25, 57. Neither Title VII nor the KAAD protects a report of crime except to the extent it opposes discrimination. *See* 42 U.S.C. § 2000e-3(a); K.S.A. 44-1009(a)(4).

Courts in this District generally ask whether a statute remedies the same retaliatory discharge, even when the common-law claim invokes a different public policy. *See Johnson v. Unified Sch. Dist. 507*, 580 F. Supp. 3d 999, 1011–12 (D. Kan. 2022) (barring the retaliatory-discharge claims of school employees who reported and pressed charges over a student's sexual assault because § 1983 supplied an adequate remedy, and holding that "differences among the underlying policy rationales matter not"); *Merkel v. Leavenworth Cnty. Emergency Med. Servs.*, No. 98-2335-JWL, 2000 WL 127266, at *11–12 (D. Kan. Jan. 4, 2000) (barring a *Palmer* claim for reporting co-workers' time-sheet fraud because the same allegations supported a § 1983 claim). *But cf. Dozier v. Bd. of Comm'rs of Franklin Cnty.*, No. 20-2576-JWL-KGG, 2021 WL 2778464, at *3 (D. Kan. July 2, 2021) (allowing an employee who reported a co-worker's sexual assault to add a retaliatory-discharge claim despite her Title VII remedy). The Court follows the prevailing view. No Kansas appellate decision addresses whether the bar reaches a report that is also a report of serious crimes, *cf. Flenker*, 967 P.2d at 303 (approving *Polson*'s general rule but declining to review its application to the KAAD), and the Court predicts that the Kansas Supreme Court would follow *Johnson* and *Merkel*. *Dozier* arose on a motion to amend, where the defendant bore the burden of showing futility, and it acknowledged the plaintiff's other remedies without analyzing their adequacy.

Under that view, Count II fails. Title VII remedies retaliation for the same report on which Count II rests, *see Rupp*, 790 F. Supp. at 1072–73; *Braun*, 1995 WL 261142, at *10–11, and Plaintiff recovers under Title VII here. The admitted facts therefore do not

state a claim under Kansas law, and the Court denies default judgment on Count II and, because it decides an unsettled question of state law without adversarial briefing, dismisses it without prejudice. *See Bixler*, 596 F.3d at 762.[6]

### *C. Damages*

Plaintiff asks for $276,523.52. Doc. 22-5 at 2. The record supports a smaller award consisting of back pay, compensatory damages, and prejudgment interest, all of which the Complaint demands without specifying an amount. Doc. 1 at 7–8, 11; *see* Fed. R. Civ. P. 54(c). Plaintiff bears the burden of proving each category of damages. *DeMarsh*, 2009 WL 3720180, at *2. Because she did not testify, the Court relies chiefly on her affidavit (Hr'g Ex. 2), Whiz's offer letter (Hr'g Ex. 14), and her final statement of damages (Doc. 22-5).

*Back pay*. Plaintiff is entitled to back pay from her firing to the date of judgment. *Daniel v. Loveridge*, 32 F.3d 1472, 1477–78 (10th Cir. 1994); *see Townley*, 2017 WL 4843296, at *7 & n.1 (extending a default-judgment back-pay award from the hearing date to judgment). Title VII reduces that award by "[i]nterim earnings or amounts earnable with reasonable diligence." 42 U.S.C. § 2000e-5(g)(1); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–21 (1975). Whiz agreed to pay Plaintiff a base salary of $42,000 a year, or $3,500 a month. Hr'g Ex. 14; Hr'g Ex. 2 ¶ 48. Prorating the first and last months, that salary totals $60,200.00 from June 11, 2025, through the date of judgment, November 16, 2026.

[6] Even if Count II stated a claim, the judgment amount would be the same, because Plaintiff seeks no damages under Kansas law beyond those she seeks under Title VII and could not recover them twice. Doc. 22-5 at 1; *see Clappier v. Flynn*, 605 F.2d 519, 529–30 (10th Cir. 1979) ("[D]ouble recovery is precluded when alternative theories seeking the same relief are pled and tried together.").

Plaintiff's interim earnings reduce that figure. Plaintiff swears that she has earned about $6,301.86 since her firing, from contract work and from driving for Lyft. Hr'g Ex. 2 ¶¶ 54–57. The Court deducts that amount. Her affidavit accounts for earnings through September 2026. The Court does not project later earnings that the record does not show.[7]

Whiz, which bears the burden of proving a failure to mitigate, offered no evidence of one. *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 937 (10th Cir. 1979). The Court awards back pay of $53,898.14.

*Bonuses*. Plaintiff has not proved that she would have earned any bonus. A lost bonus is recoverable only if the plaintiff shows that she would have earned it, and a projection that rests on speculation is not enough. *Gryder v. Dennin*, 427 F. App'x 844, 847 (11th Cir. 2011); *Neel v. Mid-Atlantic of Fairfield, LLC*, No. SAG-10-cv-405, 2012 WL 3264965, at *8 (D. Md. Aug. 9, 2012). Plaintiff seeks $30,000 for six quarterly bonuses at the $5,000 maximum. Doc. 22-5 at 1. But the offer letter promised only "[p]erformance-based bonuses up to $5000 quarterly." Hr'g Ex. 14.

The record does not show that Plaintiff would have earned the maximum, or any amount, in quarters she never worked. Plaintiff worked for two weeks, never completed a bonus quarter, and offers no bonus history and no evidence of what other managers earned. Her statement that the club "was performing well financially to [her] knowledge" does not show what she would have earned. Hr'g Ex. 2 ¶ 50. The Court awards no bonuses.

[7] The Court does not deduct the more than $28,000 that Plaintiff's mother gave her, because family support is not "interim earnings." Hr'g Ex. 2 ¶ 52; *see* 42 U.S.C. § 2000e-5(g)(1).

*Prejudgment interest*. Prejudgment interest is warranted to make Plaintiff whole. Without it, Whiz would enjoy an "interest free" loan of wages it should have paid. *Daniel*, 32 F.3d at 1478 (quotation omitted). The Court asks whether interest "will serve to compensate the injured party" and, if so, whether "the equities would preclude" it. *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286–87 (10th Cir. 2002) (quotations omitted). Interest here compensates Plaintiff for pay withheld since June 2025. Plaintiff pursued her claim promptly, and Whiz, having defaulted, offers no reason to deny interest. The rate also rests in the Court's discretion. *Id.* at 1287–88.

The Court awards simple interest at 10% per year. Courts in this District often borrow the 10% rate in K.S.A. 16-201(a) for interest on Title VII back pay. *See, e.g.*, *Hale v. Emporia State Univ.*, No. 16-4182-DDC-TJJ, 2020 WL 5038785, at *11 (D. Kan. Aug. 26, 2020); *Rahn v. Junction City Foundry, Inc.*, 161 F. Supp. 2d 1219, 1241 (D. Kan. 2001). *But see Wirtz v. Kan. Farm Bureau Servs., Inc.*, 274 F. Supp. 2d 1215, 1223–24 (D. Kan. 2003) (using the IRS underpayment rate, compounded annually). Plaintiff's wages were owed for work in Kansas, and Kansas applies the 10% rate to wages owed monthly employees, so the Kansas statutory rate is a reasonable measure of the loss of their use. K.S.A. 16-201(a). Although some courts in this District compound that interest annually, *see Hale*, 2020 WL 5038785, at *11, simple interest adequately compensates Plaintiff here. *See Barvick v. Cisneros*, 953 F. Supp. 341, 343 (D. Kan. 1997) (approving simple interest at the 10% rate on Title VII back pay). Interest runs on each month's lost pay, net of interim earnings, from the end of that month to the date of judgment. *See Reed v. Mineta*, 438 F.3d 1063, 1066–67 (10th Cir. 2006) (holding that interest on Title VII back pay accrues when each portion of the lost wages would have been due).

The Court allocates Plaintiff's Lyft earnings evenly to June through September 2026 and her remaining $2,661.38 in interim earnings (her sworn total less her Lyft earnings) evenly to June 2025 through May 2026. Hr'g Ex. 2 ¶¶ 54–57. Prejudgment interest through November 16, 2026, totals $3,738.81.[8]

*Compensatory damages*. Title VII allows compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(a)(1), (b)(3). On default, the Court must explain how it reaches its figure and must give weight to the facts the default admits. *EEOC v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 161–62 (10th Cir. 2022).

Plaintiff pleads garden-variety distress, and her affidavit describes it. Doc. 1 ¶ 50; Hr'g Ex. 2 ¶¶ 61–67. She describes anxiety and stress over money and finding work; sadness and frustration she had not felt to the same degree before; and lost confidence in raising concerns at work. Hr'g Ex. 2 ¶¶ 62–66. Her texts after the firing reflect some of that worry. Hr'g Ex. 10 (June 12, 2025). The circumstances of the firing aggravated that distress: Whiz fired Plaintiff for relaying reports of sexual assault and rape and accused her of stealing liquor and paying the dancers to lie. Doc. 1 ¶¶ 23–25, 36–39.

But Plaintiff describes no treatment or physical symptoms and offers no corroborating witness. An affidavit is a permitted form of proof, *DeMarsh*, 2009 WL 3720180, at *2, but hers says little about how long her distress lasted or how it affected her daily life.

---

[8] Gross back pay is (20/30 × $3,500) + (16 × $3,500) + (16/30 × $3,500) = $60,200.00, prorating June 2025 and November 2026 on a 30-day month. The Court deducted $221.78 a month for June 2025 through April 2026, $221.80 for May 2026, and $910.12 a month for June through September 2026. Interest on each month's net back pay is that amount × 0.10 × (days from the last day of the month to the date of judgment ÷ 365). For June 2025, for example, $2,111.55 × 0.10 × 504/365 = $291.57. The monthly amounts total $3,738.81.

Plaintiff also swears that she fears for her safety and that this fear has kept her from the hearing and from the Junction City area. Hr'g Ex. 2 ¶¶ 68–72. The Court accepts that explanation and draws no adverse inference from her absence. But her affidavit does not say when that fear arose, and it identifies no specific threat directed at her. *Id.* A week after her firing, she argued with Ms. Copney over her belongings and returned to the club to retrieve them. *Id.* ¶ 47; Hr'g Ex. 10 (June 19, 2025). And she attributes her move back to Oklahoma to her difficulty finding work. Hr'g Ex. 2 ¶ 51. The Court therefore gives this fear limited weight in assessing compensatory damages.

A comparable case supports a modest award. Uncorroborated affidavit proof of garden-variety distress has supported an award of $10,000. *See Cavalotti v. Daddyo's BBQ, Inc.*, No. 15 Civ. 6469 (PKC) (VMS), 2018 WL 5456654, at *27–28 (E.D.N.Y. Sept. 8, 2018) (recommending $10,000 on an affidavit for a manager whom a co-worker had sexually harassed and who was fired after seven weeks for complaining about it), *report and recommendation adopted*, No. 15 Civ. 6469 (PKC) (VMS) (E.D.N.Y. Sept. 25, 2018).

By contrast, two decisions from this District awarded more on stronger evidence. In *Herbert-Pereski v. Pam's Wings With Things, LLC*, the court awarded $20,000 on credited testimony and a sworn affidavit that the plaintiff's employer harassed her for months and warned that the last person who crossed him could no longer "show their face in Wichita." No. 5:23-cv-04057-HLT-GEB, 2024 WL 5694547, at *4–7 (D. Kan. Dec. 18, 2024). Plaintiff describes no comparable course of harassment or threat. In *Miser v. Freight Logistics, Inc.*, the court awarded $50,000 on credited testimony that a false accusation of truck abandonment damaged a fifteen-year reputation and cost the plaintiff at least one job. No. 23-1265-JWB, 2024 WL 2260803, at *2–3 (D. Kan. May 17, 2024). Plaintiff lost her position at Mustangs (a loss the back-pay award addresses),

but she offers no evidence that the accusations against her reached anyone outside the club or cost her any later job.

The Court therefore finds that $15,000 fairly compensates Plaintiff for the distress caused by her retaliatory firing and the accusations that accompanied it. The record does not support the $50,000 she requests. Doc. 22-5 at 1.

*Statutory cap and punitive damages*. The $15,000 compensatory award falls below even the lowest statutory cap of $50,000. 42 U.S.C. § 1981a(b)(3)(A). The Complaint prays for punitive damages, but Plaintiff's final statement does not request them. Doc. 1 at 7; Doc. 22-5. The Court awards no punitive damages.

*Front pay*. Front pay is equitable relief that the Court sets in place of reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 848 (2001); *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 1000–01 (10th Cir. 2005). An award must make the plaintiff whole without a windfall, *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1176–77 (10th Cir. 2003), and must carry an end date "based on more than mere guesswork," *Carter v. Sedgwick Cnty.*, 929 F.2d 1501, 1505 (10th Cir. 1991) (quotation omitted). Front pay is limited to the tenure the plaintiff would likely have had, and the plaintiff bears the burden of proving the amount. *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992); *Porter v. 1st Choice After Sch. Kare*, No. 20-cv-01028-RM-NRN, 2021 WL 810104, at *4 (D. Colo. Mar. 3, 2021).

Plaintiff has not carried that burden. She seeks two years of front pay at $62,000 a year, a figure that assumes maximum bonuses she has not shown she would earn. Doc. 22-5 at 1. She worked for two weeks, at will. Doc. 1 ¶¶ 21, 36–39; Hr'g Ex. 14. The record also casts doubt on the club's business prospects: on June 8, 2025, Mr. Andrade wrote that "not much money" had been deposited "over the last several days" and, to save on

hotel costs, accepted Plaintiff's offer to leave early; Plaintiff agreed that "[i]t's been so dead." Hr'g Ex. 12. She had also told Ms. Copney that the bouncers "haven't been paid in about a month." Doc. 22-2 at 4:9–10. In *Bennett v. Luigi's Italian Restaurant*, No. 18-1295-JTM, 2020 WL 1503472, at *6 (D. Kan. Mar. 30, 2020), the court awarded three months of front pay where one plaintiff testified that she intended to stay as long as possible and nothing suggested that the other would have left. Plaintiff offers no comparable evidence of how long she would have stayed.

On this record, any front-pay award would rest on guesswork. A defendant whose unlawful firing makes the plaintiff's future tenure uncertain may not take advantage of that uncertainty, *Wulf v. City of Wichita*, 883 F.2d 842, 873 (10th Cir. 1989), but a front-pay award still must not "require unreasonable speculation," *id.* at 874 (quotation omitted). In *Wulf*, the plaintiff's age at termination supplied a basis for estimating the duration of front pay. Plaintiff offers nothing comparable. *See Umholtz v. Kan. Dep't of Soc. & Rehab. Servs.*, No. 11-4018-JAR, 2013 WL 5797600, at *3–4 (D. Kan. Oct. 28, 2013) (denying front pay as "entirely speculative"). The Court awards no front pay.

*Injunctive relief*. The Complaint prays for injunctive relief, but Plaintiff identifies no injunction and does not pursue one in her final statement. Doc. 1 at 7, 11; Doc. 22-5. The Court denies injunctive relief.

### *D. Attorney's Fees and Costs*

Plaintiff may recover a reasonable attorney's fee as the prevailing party, but she must seek it by motion. 42 U.S.C. § 2000e-5(k); Fed. R. Civ. P. 54(d)(2). A party who moves for fees "must promptly initiate consultation with the other party or parties," and the Court "will not consider" the motion until the movant files a statement of consultation. D. Kan. Rule 54.2(a), (d). Default alone does not excuse consultation. *See*

*Albert v. Wesley Health Servs.*, No. 00-2067-KHV, 2001 WL 777072, at *1 (D. Kan. July 3, 2001); *cf. Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1178 (D. Kan. 2018) (excusing consultation as futile where mail to the pro se defendant was returned undeliverable and the defaulting businesses never appeared). Although Whiz cannot appear without counsel, that "does not prevent plaintiff from consulting or at least attempting to consult directly with defendant." *Albert*, 2001 WL 777072, at *1. And assuming, as above, that Whiz's stricken answer was an appearance, Plaintiff must also serve her fee filings on Whiz. *See* Fed. R. Civ. P. 5(a)(1)–(2); *Albert*, 2001 WL 777072, at *1 (requiring service on a defaulted corporation that had previously appeared through counsel). Plaintiff's counsel therefore must attempt in good faith to consult Whiz, which counsel may do by letter to its registered agent and owners, and must serve the motion and supporting papers by mailing them to the registered agent and owners at the addresses listed in Doc. 23 and file a certificate of service. Fed. R. Civ. P. 5(b)(2)(C), (d)(1)(B)(i); *see* Docs. 20, 23. The statement of consultation must give the date, recipients, and method of each attempt and state whether Whiz responded. If Whiz does not respond, that statement satisfies the consultation requirement. *See* D. Kan. Rule 54.2(c)(1), (d).

Plaintiff bears "the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998); *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Her motion must document every hour she claims, including any hours not reflected in her current invoice.

Plaintiff is also entitled to her costs, which the Clerk will tax. Fed. R. Civ. P. 54(d)(1). Plaintiff must file a bill of costs with a supporting brief under D. Kan. Rule 54.1(a). *See Miser*, 2024 WL 2260803, at *5. That brief must include the supporting invoices and must state that Plaintiff made a reasonable effort to confer with Whiz, which counsel may do by letter to its registered agent and owners. D. Kan. Rule 54.1(a)(2)(C)–(D); *cf. Albert*, 2001 WL 777072, at *1. The Court ordered the transcripts of the recordings, Doc. 20, but no invoice for the $1,082.20 transcription charge, Doc. 22-5 at 2, is in the record. Plaintiff must attach that invoice to her bill of costs.

## IV. CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Default Judgment (Doc. 12) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Count I and denied as to Count II, which is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's requests for bonuses, front pay, punitive damages, and injunctive relief are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment in favor of Plaintiff Krystina Berko and against Defendant Whiz, LLC, d/b/a Mustangs Gentleman's Club, in the amount of $72,636.95, consisting of $53,898.14 in back pay, $3,738.81 in prejudgment interest, and $15,000.00 in compensatory damages, plus costs as taxed by the Clerk and post-judgment interest at the rate provided in 28 U.S.C. § 1961(a). The judgment shall also state that Count II is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff may move for attorney's fees within fourteen days after entry of judgment and may file a bill of costs, following the consultation, service, and filing requirements set out in Part III.D.

**IT IS FURTHER ORDERED** that the Clerk shall mail a copy of this Memorandum and Order and the Judgment to Defendant's registered agent, Kathryn Mayhew, 625 N. Adams, Junction City, Kansas 66441, and to Defendant's owners, Bruce Copney and Jennifer Copney, 170 Ryan Street, Port Charlotte, Florida 33954, and Kevin Andrade, 110 Ferdon Circle, Port Charlotte, Florida 33954. With entry of judgment, this case is closed.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge